IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2018

**ALLEN BOOKER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 14-04084        J. Robert Carter, Jr., Judge

_____

**No. W2017-01662-CCA-R3-PC**

_____

The Petitioner, Allen Booker, appeals the denial of his petition for post-conviction relief, arguing that he failed to receive due process at his trial or in the post-conviction evidentiary hearing and the post-conviction court erred in finding that he received effective assistance of trial counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Allen Booker.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Scott Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner was convicted by a Shelby County Criminal Court jury of aggravated robbery and was sentenced by the trial court as a Range I offender to ten years in the Department of Correction. His conviction was affirmed by this court on direct appeal, and the Petitioner did not seek permission from our supreme court to appeal. State v. Allen Booker, No. W2015-02020-CCA-R3-CD, 2016 WL 4973271, at *1 (Tenn. Crim. App. Sept. 15, 2016), no perm. app. filed.

Our direct appeal opinion provides a succinct overview of the case:

> This case arises out of the February 14, 2014 robbery of Keenan Hall, the victim, at gunpoint, while he sat in his car outside his home after returning from visiting his girlfriend. The [Petitioner] was developed as a suspect when his fingerprint was discovered on the handle of the victim's car door and the victim had indicated that the perpetrator had touched the door handle. The [Petitioner] was arrested and gave an incriminating statement to the police. He was indicted for one count of aggravated robbery.

Id.

At trial, the victim testified "that the robber was over six feet tall and light-complected, and he identified the [Petitioner] as the robber[.]" Id. at *3. The victim acknowledged that he had been unable to identify the Petitioner at the preliminary hearing or from a photographic array he was shown after the robbery. Id. He further acknowledged that "he could not say with certainty that the [Petitioner] was the man who robbed him." Id.

The State introduced the victim's home surveillance videotape of the robbery, which showed that the perpetrator touched the driver's door handle. Id. Through the testimony of various witnesses, the State presented evidence that a latent print lifted from the door handle touched by the perpetrator matched the fingerprint of the Petitioner. Id. The State additionally presented the Petitioner's statement, in which the Petitioner attempted to minimize his actions but admitted that he had robbed the victim while armed with a BB gun. Id. at *2. The Petitioner also told the officers that he had a .357 revolver, a BB gun, and some bullets at his home. Id. at *3.

The Petitioner's father testified on the Petitioner's behalf that the Petitioner had "mental problems," was easily influenced, and could not "read, write, or comprehend things." Id. at *4. The Petitioner's aunt testified that the Petitioner lived with her and that the police found no guns or ammunition when they searched her residence following the Petitioner's arrest. Id. The Petitioner testified that he denied to the police that he committed the robbery and told them that he did not want to provide a statement because he could not read or write. Id. He identified his initials and signature on the advice of rights form and the statement and acknowledged that a police detective read portions of his statement aloud to him. Id. He claimed, however, that some of what was contained in the statement read in court was not what was read to him. Id.

On February 7, 2017, the Petitioner filed a pro se petition for post-conviction relief in which he raised a claim of ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that his trial counsel was ineffective for failing to cross-examine the victim regarding his identification of the Petitioner, for failing to argue that the in-court identification was unduly suggestive, for failing to investigate the Petitioner's low-level reading history, and for failing to provide discovery to the Petitioner so that the Petitioner could aid in his own defense.

At the evidentiary hearing, the Petitioner testified that trial counsel met with him on "[a] few occasions" but for only "[t]wo to three minutes" each time. He said he told trial counsel that he could not read or write and asked him to obtain his school records. He believed that trial counsel could have done a better job at trial in highlighting the inconsistencies in the detective's testimony about his alleged statement by "follow[ing] up with [the school] records" that documented his illiteracy.

The Petitioner testified that trial counsel never provided him with a copy of discovery and when he asked him about it, trial counsel responded that it would not do him any good because he would be unable to read it. The Petitioner said he asked trial counsel on "[s]everal occasions" for help reading the report. He stated he thought there were several issues in discovery that trial counsel failed to address, including how the victim allegedly knew him and why the victim was unable to identify him from the photographic lineup and during the preliminary hearing.

On cross-examination, the Petitioner acknowledged that he told the police detective that he could not read or write and that the detective had someone read his statement aloud to him. He said there was nothing he wanted to change in the statement as "[f]ar as what [the reader] told [him] it said[.]"

Trial counsel, who had been practicing law since 1991, testified that he met with the Petitioner on several occasions in meetings that varied in length but were more than the two or three minutes claimed by the Petitioner. He said he reviewed discovery with the Petitioner, including the photographic lineup, and read the discovery materials to the Petitioner when the Petitioner informed him he was unable to read. He asked the Petitioner if he wanted a copy of discovery but the Petitioner refused, asking that trial counsel instead mail it to the Petitioner's aunt, which trial counsel did. Among other things, trial counsel also filed a motion to suppress the Petitioner's statement, which he based on the Petitioner's illiteracy, and had the Petitioner sign a release authorizing counsel to obtain his medical and school records. Trial counsel could not recall the specifics of his cross-examination of trial witnesses, but believed that he cross-examined

the victim about his inability to identify the Petitioner from the photographic lineup or at the preliminary hearing.

On cross-examination, trial counsel recalled that he was able to get the victim to acknowledge he was not completely certain in his identification of the Petitioner. He agreed that the Petitioner's fingerprint was found on the vehicle's door handle and that the home surveillance tape corroborated the victim's account that the perpetrator touched his driver's door handle. Trial counsel acknowledged that he retained a literacy expert who evaluated the Petitioner and testified on his behalf at the motion to suppress the statement. As for the authenticity of the home videotape, he said that the victim's father, who had installed the home security camera, identified the videotape at trial.

On redirect examination, trial counsel testified that he subpoenaed the Petitioner's Shelby County School records, which showed that the Petitioner was in the eleventh grade but did not reflect that he was unable to read. Counsel explained that he did not introduce the school records at trial because of his concern that "putting the school records in front of the jury without any of the school records saying he cannot read would possibly prejudice the jury against [the Petitioner] making them think he can, in fact, read and he couldn't read." Trial counsel identified a "Shelby County Government Authorization for Release of Information" form, on which he had written "Read to and explained by [trial counsel,]" with the date of February 4, 2015, and which was signed by the Petitioner.

On recross examination, trial counsel identified a manila envelope dated October 22, 2014, and signed by the Petitioner, on which trial counsel had written, "I cannot read. I wish for my discovery to stay with my attorney and I authorize my attorney to give my discovery to Fannie Booker, [my] aunt."

The Petitioner, called as a rebuttal witness, testified that the signature on the manila envelope was not his.

On August 7, 2017, the post-conviction court entered an order denying the petition, finding that the Petitioner failed to meet his burden of demonstrating that his counsel was deficient in his performance or that any alleged deficiency prejudiced the outcome of his case. Thereafter, the Petitioner filed a timely notice of appeal to this court.

- 4 -

**ANALYSIS**

The Petitioner argues on appeal that his trial counsel was ineffective for not objecting to the trial court's failure to instruct the jury on lesser-included offenses or raising the issue in the direct appeal, for not exploring the Petitioner's "problems regarding his illiteracy" as "part of his defense before the jury," and for not either requesting a mistrial based on the victim's inability to identify the Petitioner at trial or moving to suppress the in-court identification. The Petitioner acknowledges that he failed to raise the lesser-included offenses issue in his post-conviction petition but argues that it constitutes plain error. The Petitioner further argues that he was denied his due process rights at trial due to the trial court's failure to instruct the jury on the proper lesser-included offenses, and denied his due process rights at the post-conviction hearing due to the post-conviction court's failure to address each of his allegations of ineffective assistance of counsel.

The State responds by arguing that the Petitioner has not established that he was denied the effective assistance of counsel, that the Petitioner has waived the issues he failed to include in his post-conviction petition, and that the Petitioner cannot show any violation of his due process rights because he could have raised the lesser-included offenses issue in his direct appeal and the post-conviction court ruled on all the issues that post-conviction counsel argued at the hearing. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); see State v.

Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The same principles apply in determining the effectiveness of trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The record fully supports the post-conviction court's finding that the Petitioner failed to meet his burden of demonstrating any deficiency in counsel's performance or resulting prejudice to his case. The Petitioner argues on appeal that trial counsel was ineffective for not exploring the Petitioner's "problems regarding his illiteracy" or calling a literacy expert to testify at trial and for not moving to suppress the victim's in-court identification of the Petitioner or moving for a mistrial after the victim identified the

- 6 -

Petitioner. Trial counsel's testimony, however, which was implicitly accredited by the post-conviction court, established that trial counsel obtained the Petitioner's school and medical records and made a strategic decision not to introduce the school records at trial because they did not reflect the Petitioner's inability to read. Counsel also agreed, and the transcript reflects, that counsel succeeded in getting the victim to acknowledge that he was not certain in his identification of the Petitioner. The transcript further reflects that the Petitioner's inability to read was brought out before the jury through the testimony of the police detective who took his statement and through the testimony of the Petitioner's father. The Petitioner has not shown that trial counsel was deficient for not introducing the school records or moving to suppress the in-court identification or that the Petitioner was prejudiced as a result of counsel's alleged deficiency.

The Petitioner acknowledges that he did not raise his allegation that trial counsel was ineffective for failing to object to the trial court's "refus[al] to instruct the jurors on the proper lesser included offenses in his post-conviction petition" or raise the issue on direct appeal, but argues that we should review the issue as plain error. However, "the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed either waived or previously determined." Grindstaff v. State, 297 S.W.3d 208, 219 (Tenn. 2009) (citing State v. West, 19 S.W.3d 753, 756-57 (Tenn. 2000) (footnote and citation omitted). Because the Petitioner did not raise this issue before the post-conviction court, it is waived. See Cauthern v. State, 145 S.W.3d 571, 596 (Tenn. Crim. App. 2004). Because the issue was waived, this issue is therefore without merit.

We also find meritless the Petitioner's claim that the post-conviction court failed to consider all of the claims he presented in his post-conviction petition, thereby depriving him of his due process rights. In its order denying the petition, the post-conviction court reviewed the testimony presented at the evidentiary hearing, including the Petitioner's various complaints, before concluding that the Petitioner failed to meet his burden of showing that his counsel's performance was deficient and that the deficient performance prejudiced the outcome of the proceeding. The fact that the post-conviction court did not address each allegation in detail in its written order does not mean that the court did not consider the claims. Moreover, as the State points out, the court specifically addressed the only two allegations argued by post-conviction counsel at the hearing, which concerned counsel's alleged failure to adequately investigate or introduce at trial evidence regarding the Petitioner's illiteracy or to follow through on the discovery materials provided to the Petitioner's family member. Accordingly, we affirm the judgment of the post-conviction court denying the petition.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE